No. 04-223

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 84

MOUNTAIN WATER COMPANY,

Plaintiff and Appellant,

v.

MONTANA DEPARTMENT OF PUBLIC SERVICE
REGULATION, MONTANA PUBLIC SERVICE
COMMISSION, MONTANA DEPARTMENT OF
ENVIRONMENTAL QUALITY, and CIRCLE H
DEVELOPMENT CO.,

Defendants and Respondents.

APPEAL FROM:     District Court of the First Judicial District,
                 In and for the County of Lewis and Clark, Cause No. ADV-2003-321,
                 The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                John Alke, Amy Christiansen, Hughes, Kellner, Sullivan & Alke, PLLP,
                Helena, Montana

        For Respondent Public Service Commission:

                Al Brogan, Special Assistant Attorney General, Helena, Montana

        For Respondent Circle H Development, Co.:

                Zane K. Sullivan, D. Scott Manning, Sullivan, Tabaracci & Rhoades, P.C.,
                Missoula, Montana

                                Submitted on Briefs:  October 6, 2004

                                        Decided:  April 5, 2005

Filed:

        _____
                        Clerk

Justice John Warner delivered the Opinion of the Court.

¶1     Mountain Water Company (MWC) appeals from an order of the First Judicial District Court, Lewis and Clark County, dismissing its action for declaratory and injunctive relief against Defendants Montana Department of Public Service Regulation (DPSR), Montana Public Service Commission (PSC), Montana Department of Environmental Quality (DEQ), and Circle H Development Company (Circle H) for lack of subject matter jurisdiction. We affirm.

¶2     We address the following issue on appeal:

¶3     Did the District Court err in dismissing MWC's action because it did not exhaust its administrative remedies?

BACKGROUND

¶4     This action arises out of the efforts of MWC to cease providing water service to a subdivision developed by Circle H in the Missoula area. In 1994 Circle H proposed to develop 78 lots. MWC agreed to provide water service to these lots pursuant to the rules and regulations of PSC and DEQ. DEQ approved Circle H's water system design. In 1997 Circle H applied to DEQ for approval of a new water system design intended to provide water for a modified subdivision proposal with more lots. DEQ approved this proposal, but specified that construction of the system had to commence within two years. In 1999 DEQ approved a time-extension for the construction of this new system, but mandated that the construction of the water system had to be completed by November 22, 2002. On January 26, 2000, Circle H applied to DEQ for approval of an interim water system to provide water

2

for five lots while construction of the approved water system was being completed. DEQ approved this request March 27, 2000.

¶5 On April 25, 2000, Circle H requested a two-inch commercial service from MWC, from an existing water main, for a commercial building on the outskirts of the Circle H Ranch. MWC granted Circle H's request. Since this time, Circle H has apparently been using this source of water to supply water to the entire subdivision. Circle H has never completed construction of the DEQ approved water system, and the time to complete it has expired.

¶6 Circle H now has proposed another subdivision on its land. MWC has declined to agree to supply water for this new development. Circle H contends MWC is legally obligated to help it secure approval of its new subdivision and demands that MWC represent to DEQ that it will provide water to the new subdivision.

¶7 MWC filed this action seeking a declaratory judgment that it may cease providing water to the various Circle H subdivisions, as well as injunctive relief, seeking, in essence, a reprieve from having to provide water to the various Circle H subdivisions. The District Court dismissed MWC's Complaint concluding it lacked subject matter jurisdiction to hear the case because MWC had not exhausted its administrative remedies. MWC appeals.

STANDARD OF REVIEW

¶8 The decision to dismiss a complaint for declaratory relief is within the sound discretion of the district court and this Court will not disturb that decision absent an abuse of discretion. *Northfield Ins. Co. v. Montana Assn. of Counties*, 2000 MT 256, ¶ 8, 301

3

Mont. 472, ¶ 8, 10 P.3d 813, ¶ 8 (citation omitted). However, this Court reviews the conclusions upon which such a dismissal is based, which in this case is the District Court's determination it lacked subject matter jurisdiction, to determine whether the court's interpretation of the law is correct. *Art v. Mont. Dept. of Labor & Indus.*, 2002 MT 327, ¶ 9, 313 Mont. 197, ¶ 9, 60 P.3d 958, ¶ 9.

DISCUSSION

**¶9** **Did the District Court err in dismissing MWC's action because it did not exhaust its administrative remedies?**

¶10 MWC does not dispute that both DEQ and PSC have regulatory jurisdiction over the issues alleged in its Complaint. MWC's argument is that the District Court incorrectly dismissed its Complaint because it has no adequate remedy at the administrative level, and therefore has not failed to exhaust its administrative remedies. It asserts that since Circle H's alleged violations involve two administrative agencies, DEQ and PSC, a declaratory ruling issued by either agency cannot address matters which are within the jurisdiction of the other. Thus, MWC argues, if it were to proceed with a contested case hearing through each respective agency, upon review of those separate agency decisions in district court, the district court could only bind one agency, and not both, with each decision.

¶11 MWC asserts that only a district court judgment, naming all agencies involved as well as Circle H, can bind the agencies and a third party to the same course of action. Additionally, MWC argues that since there are no factual issues in this case, the underlying purpose of the exhaustion doctrine, to ensure a factual foundation is of record, is not served

4

by requiring MWC to exhaust its administrative remedies.

¶12    Circle H argues MWC is not excused from the requirement that it exhaust its administrative remedies simply because it alleges a single administrative process may not provide a complete remedy for issues involving more than one agency. Circle H maintains that MWC must exhaust the separate remedies available through PSC and DEQ because there is no exception to the exhaustion doctrine for matters involving multiple agencies. Circle H denies MWC's contention there are no issues of fact for the agency determination, pointing to MWC's allegations in its Complaint.

¶13    Defendants PSC and DEQ advance similar arguments as those raised by Circle H and assert that our decision in *Brisendine v. Department of Commerce, Bd. of Dentistry* (1992), 253 Mont. 361, 833 P.2d 1019, is controlling. MWC disputes the applicability of *Brisendine*, arguing that it would be futile to proceed with agency contested cases.

¶14    Generally, before a party can seek declaratory relief in district court, it must exhaust its administrative remedies. *Brisendine*, 253 Mont. at 366, 833 P.2d at 1021-22. By filing a declaratory judgment action in district court before exhausting its administrative remedies, MWC seeks to skip the administrative process. This constitutes an unwarranted intrusion into PSC and DEQ's regulatory authority granted under § 69-1-102, *et seq*., MCA, and § 75-6-101, *et seq*., MCA, respectively. Such a practice is not permitted. *Brisendine*, 253 at 365, 833 P.2d at 1021.

¶15    In *DeVoe v. Department of Revenue* (1993), 263 Mont. 100, 866 P.2d 228, we held that when Plaintiff DeVoe had attempted to exhaust his administrative remedies but, because

5

of the particular administrative rules and statutes involved, he was unable to obtain relief, it would be a useless act to require him to continue on in the administrative process. We noted that the law did not require useless acts. *DeVoe*, 263 Mont. at 115, 866 P.2d at 238; § 1-3-223, MCA. However, in this case MWC has neither attempted to exhaust its administrative remedies, nor has it alleged facts that if proven would show the futility of the available administrative remedies. It has only speculated that the two agencies might issue conflicting opinions which would not be binding on each other, but leave it in an untenable position. This untested possibility does not lead to the conclusion that it would be futile to secure an administrative remedy from either, or both, PSC or DEQ.

¶16 The courts generally will not require exhaustion of administrative remedies when recourse to an administrative remedy would be futile. However, the mere possibility of an adverse decision does not mean that resort to an administrative agency is futile. 73 C.J.S. *Public Administrative Law & Procedure*, § 91 (2004). Likewise, the mere possibility that PSC and DEQ might render decisions that could in some degree conflict with each other, does not justify bypassing the agencies altogether.

¶17 The parties do not dispute that both agencies, independent of one another, have the authority and the ability to provide MWC the relief it seeks. We decline to discard the expertise and the fact-finding mechanisms of administrative agencies based on speculation that they will render irreconcilable decisions. The agencies involved can be made aware of what is being asked of each of them, and it can be anticipated they will cooperate to reach a harmonious result, rather than enter decisions that will be irreconcilable. *Cf. Pennsylvania*

6

*v. Interstate Commerce Com.* (D.C. Cir. 1977), 561 F.2d 278, 292.

¶18   The District Court did not err when it dismissed MWC's Complaint for lack of subject matter jurisdiction, holding MWC must first exhaust its administrative remedies, and then if it is dissatisfied, seek judicial review. *Gilpin v. State* (1991), 249 Mont. 37, 39, 812 P.2d 1265, 1266-67.

¶19   Affirmed.

/S/ JOHN WARNER

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ JAMES C. NELSON
/S/ JIM RICE