NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2023 VT 49

No. 23-AP-042

| | |
|---|---|
| Simeon Bruner | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Rutland Unit, |
| | Civil Division |
| | |
| Bradford Gee & Town of Chittenden | June Term, 2023 |

Helen M. Toor, J.

Alan P. Biederman of Biederman Law Office, Meredith, New Hampshire, for Plaintiff-Appellant.

William H. Meub of Meub Associates, PLC, Rutland, for Defendant-Appellee Gee.

PRESENT: Eaton, Carroll and Waples, JJ., and Johnson, J. (Ret.), and Grearson, Supr. J. (Ret.), Specially Assigned

¶ 1.  **WAPLES, J.**  This is the second appeal in this partition action, which involves a parcel of property jointly owned by plaintiff Simeon Bruner and defendant Bradford Gee. Plaintiff argues that the court erred in assigning the property to defendant and ordering defendant to pay plaintiff for his share. We conclude that the trial court applied the correct legal standard and that its findings are supported by the evidence presented, and therefore affirm.

¶ 2.  In its initial order, issued in March 2022, the trial court made the following findings of fact. Plaintiff and defendant own a 100-acre property in Chittenden, Vermont, as tenants in common. The property has been in defendant's family for over 100 years. Defendant's family used the property exclusively for recreation until around 1970, when defendant and his parents began

living in a log cabin built by his father and grandfather. Defendant left for several years but later returned to live on the property, and has resided there for many years. Defendant uses a forestry management plan and logs wood from the property to heat his home and pay his share of the property taxes.

¶ 3. Over the years, defendant and his family added several structures to the land, including a log cabin, a mobile home, a house, and other buildings. They drilled wells, built a windmill, and added solar panels and a pond. They also improved access to the property from the town road. Defendant estimated that the driveway would cost about $190,000 to install today. He estimated that the buildings cost $140,000 and the pond cost $12,800. Defendant did not seek plaintiff's permission before making the various improvements to the property, and plaintiff did not object. Defendant also brush-hogs the property regularly. He estimated the value of this service to be $25,600. Plaintiff did not contest these valuations.

¶ 4. Plaintiff owns approximately 500 acres adjoining the property. He purchased his half-interest in the property from defendant's uncle in 1970 for $5000. He visits the property approximately five to ten times a year. His interest in the land is to extend the undeveloped area around his adjoining lands.

¶ 5. Defendant or his family have paid all property taxes on the structures, which are assessed by the town at $129,600. Plaintiff and defendant have each paid half of the property taxes on the land, which is assessed at $116,300. Plaintiff has paid nothing else toward the maintenance of the property or the improvement of the driveway.

¶ 6. In 2016, plaintiff filed a complaint against defendant and other neighboring landowners, alleging that defendants had exceeded their license to use a right-of-way crossing plaintiff's land by widening their driveway, placing obstacles on the driveway and plaintiff's land, and giving permission to others to use the driveway. Defendant filed a counterclaim seeking

2

partition of the parties' property. Plaintiff's claims were eventually dismissed, leaving only defendant's partition claim to be decided.

¶ 7. The parties waived appointment of commissioners pursuant to 12 V.S.A. § 5169. In January 2022, the court held a bench trial on the partition claim. Plaintiff proposed a division that would give 68.3 acres to him and 36.2 acres to defendant. Defendant would retain all but one of the structures, and each parcel would have a pond. The division would essentially give defendant the interior of the property and give plaintiff the surrounding land on three sides. Defendant made no proposal to divide the property.

¶ 8. The court rejected plaintiff's proposed division because it would give the parties unequal shares of acreage and there was no evidence to demonstrate that the proposed parcels were equal in value. The proposal would also prevent defendant from accessing land that he had been logging under a forest management plan to provide wood for heating and to pay the property taxes, and cut off defendant's access to a family gravesite on an adjoining parcel. The proposal also failed to weigh the value of defendant's family's century of ownership and use of the land.

¶ 9. The court concluded that the most equitable resolution was to assign the property to defendant, with defendant to pay plaintiff for his half-share. It found that the fair market value of the land and structures was $270,220. Defendant and his family had spent about $140,000 on the buildings, and the court concluded that defendant was entitled to a setoff equivalent to half that amount, as well as the taxes paid on the buildings. It concluded that the amount due from defendant to plaintiff was $63,839, and ordered defendant to pay plaintiff that amount within ninety days. If defendant did not do so, the property would be divided into two lots as proposed by plaintiff, unless the parties agreed to a different division.

¶ 10. Both parties appealed. Plaintiff argued that partition in kind—that is, a physical division of the property and allocation of the resulting lots to the parties—was neither impossible nor inequitable, and therefore a physical division of the property was the only permissible remedy.

Defendant claimed that the trial court used the wrong methodology for calculating the appropriate payment to be made to plaintiff. He also claimed that it was error for the court to provide for partition in kind as a backup remedy, and sought to strike that portion of the court's order.

¶ 11. On appeal, a three-Justice panel of this Court reversed the trial court's decision because it had ordered partition by assignment without first finding that the property could not be divided without great inconvenience to the parties, as required by 12 V.S.A. § 5174. Bruner v. Gee, No. 22-AP-088, 2022 WL 8012434, at *2 (Vt. Oct. 14, 2022) (unpub. mem.) [https://perma.cc/W32A-QNSQ]. We remanded for the court to consider whether any physical division was possible without great inconvenience to the parties, and therefore did not address defendant's arguments. Id.

¶ 12. Upon remand, the trial court held a status conference at which the parties discussed how to proceed. There is no indication in the record that either party proposed a different division or sought to present further evidence. Plaintiff subsequently submitted a memorandum arguing that his original proposed division was possible without great inconvenience to the parties, and defendant submitted a memorandum opposing partition in kind. No further evidence was presented to the court.

¶ 13. In January 2023, the court issued a decision concluding that the property could not be divided as proposed by plaintiff without causing great inconvenience to defendant because of defendant's need to access an adjoining lot for logging and the inequity in the acreage, and because the proposed division would further restrict his potential road access options. The court concluded that it had no evidence to support any other physical division. It therefore assigned the property to defendant and ordered him to pay plaintiff $63,839.

¶ 14. On appeal, plaintiff argues that the trial court disregarded this Court's instructions on remand by failing to consider other alternative physical divisions of the property, and improperly placed the burden on plaintiff to present evidence to support his proposed division. Plaintiff further

4

claims that the court erred in finding that the property was indivisible because it found great inconvenience to defendant only, as opposed to both parties. Finally, plaintiff asserts that the court's finding that physical division would cause great inconvenience to defendant was not supported by the evidence.

¶ 15. "[W]e review the trial court's exercise of discretion in applying the equitable remedy of partition for abuse of discretion." Currie v. Jane, 2014 VT 106, ¶ 19, 197 Vt. 599, 109 A.3d 876. The trial court's factual findings will stand if "they are supported by any credible evidence in the record." Whippie v. O'Connor, 2010 VT 32, ¶ 12, 187 Vt. 523, 996 A.2d 1154. We review its determination of legal questions de novo. Currie, 2014 VT 106, ¶ 19.

¶ 16. "[P]artition 'is based upon the principle that no one can be compelled to hold property with another, and it is available to anyone who does hold property in common with another.' " Wynkoop v. Stratthaus, 2016 VT 5, ¶ 19, 201 Vt. 158, 136 A.3d 1180 (quoting Sims v. Sims, 1996–NMSC–078, ¶ 38, 930 P.2d 153). Vermont's partition statute presumes that partition will be accomplished by physical division and allotment to individuals with interests in the property. See 12 V.S.A. §§ 5169-5173 (providing that, when partition is sought, property shall be divided among co-owners and new shares recorded by deed). However, "[w]hen it appears that the real estate, or a portion thereof, cannot be divided without great inconvenience to the parties interested, the court may order it assigned to one of the parties, provided he or she pays to the other party" an equitable sum of money. Id. § 5174. If no party will take an assignment, the court may order the property to be sold. Id. § 5175. "In sum, under the statutory scheme, partition in kind is preferable to assignment, and assignment is preferable to sale." Wilk v. Wilk, 173 Vt. 343, 347, 795 A.2d 1191, 1194 (2002).

¶ 17. In some cases, it may be physically impracticable or impossible to subdivide the land into shares. See, e.g., id. at 350, 795 A.2d at 1196 (affirming determination by commissioners and trial court that one-acre parcel land with improvements could not be reasonably divided between

5

plaintiff and defendant). But the fact that a property can be physically divided in some manner does not mean that partition in kind must automatically be awarded. See Delfino v. Vealencis, 436 A.2d 27, 31 (Conn. 1980) ("Although a partition in kind is physically practicable, it remains to be considered whether a partition in kind would also promote the best interests of the parties."). As the statute makes clear, assignment or sale may be appropriate if physical division, though technically possible, will greatly inconvenience the parties. See 12 V.S.A. § 5174.

¶ 18. The statute does not define the term "great inconvenience." The traditional test applied by this Court is "whether the value of the share of each owner in case of a partition would be materially less than his share of the money equivalent that can probably be obtained for the whole." Blanchard v. Cross, 97 Vt. 370, 373, 123 A. 382, 384 (1924); see also Wells v. Spera, 2023 VT 18, ¶ 15, __ Vt. __, 293 A.3d 330 (affirming commissioners' determination that partition in kind would materially decrease property's value and therefore could not be achieved without greatly inconveniencing parties); Billings v. Billings, 114 Vt. 70, 74, 39 A.2d 748, 750 (1944) (applying same test). Courts in other jurisdictions have applied a similar test in determining whether partition in kind will be greatly inconvenient or prejudicial to the parties. See Delta Materials Corp. v. Bagdon, 599 N.E.2d 250, 254 (Mass. App. Ct. 1992) (stating that considerations involved deciding whether partition in kind will greatly inconvenience parties "no doubt have reference mainly to the physical conditions of the land to be divided, but the advantage or disadvantage generally must be pecuniary" (quotation omitted)); Leavitt v. Benzing, 82 A.2d 86, 87 (N.H. 1951) (applying similar test); Nordgaarden v. Kiebert, 527 P.3d 486, 495 (Idaho 2023) (same).

¶ 19. In recent years, several courts have recognized that factors beyond market value may also be relevant in deciding whether partition in kind is equitable. See Nordgaarden, 527 P.3d at 494-95; Eli v. Eli, 1997 S.D. 1, ¶ 15, 557 N.W.2d 405, 410; Ark Land Co. v. Harper, 599 S.E.2d

6

754, 761 (W. Va. 2004); Delfino, 436 A.2d at 32-33.[1] These courts have reasoned that many owners have historical, sentimental, or practical reasons for wanting to retain ownership of a particular property, and that it is therefore appropriate for the trial court to consider the totality of the circumstances in determining whether partition in kind will cause great prejudice to a co-owner. Eli, 1997 S.D. 1, ¶ 15; see also Nordgaarden, 527 P.3d at 494; Ark Land Co., 599 S.E.2d at 761. For example, a history of longstanding family ownership, a party's use of the land for their home or business, or other nontangible factors may be relevant, in addition to the effect of division on the market value of the land. See Ark. Land Co., 599 S.E.2d at 760-62 (discussing cases). For this reason, these courts have held that "monetary considerations, while admittedly significant, do not rise to the level of excluding all other appropriate considerations." Eli, 1997 S.D. 1, ¶ 15; see also Nordgaarden, 527 P.3d at 494 (quoting Eli); Ark Land Co., 599 S.E.2d at 761 (same); Fike v. Sharer, 571 P.2d 1252, 1254 (Or. 1977) (recognizing that while financial considerations are primary factor under Oregon law in considering whether partition in kind or by sale will cause great prejudice, "sentimental reasons, especially an owner's desire to preserve a home, may also be considered").

¶ 20. While these decisions involved partition statutes that provided only partition by sale as an alternative to partition in kind, their underlying reasoning is persuasive in the context of our statute. Partition is an equitable remedy. Currie, 2014 VT 106, ¶ 19. The court must decide each case on its particular facts. Courts should continue to consider the traditional test, which will likely be determinative in many cases. See, e.g., Wells, 2023 VT 18, ¶ 15. However, we conclude that the

---

[1] The partition statutes in other jurisdictions use different terms than "great inconvenience," but they have traditionally interpreted their statutes in the same manner as we did in Blanchard. See Ark Land Co., 599 S.E.2d at 760 (recognizing that whether value of parcels if divided is materially less than value of property if owned by one person "is a fair test" for determining if interests of parties will be promoted by sale, as required by West Virginia statute (quotation omitted)); Eli, 1997 S.D. 1, ¶ 9 (stating traditional test for "great prejudice" is whether "the value of the land when divided into parcels is substantially less than its value when owned by one person" (quotation omitted)); cf. Nordgaarden, 527 P.3d at 493 (explaining that term "great prejudice" in Idaho partition statute was not defined by statute or Idaho case law).

trial court may also consider factors beyond the effect on market value when determining whether partition in kind will greatly inconvenience the parties. See Wilk, 173 Vt. at 346, 795 A.2d at 1194 (explaining that because partition is equitable in nature, "courts should consider all relevant circumstances to ensure that complete justice is done" (quotation omitted)); Harris v. Harris, 275 S.E.2d 273, 276 (N.C. Ct. App. 1981) (explaining that while test for whether partition in kind will result in great prejudice is whether it will result in material decrease in value, "many considerations, other than monetary, attach to the ownership of land"). Consideration of nonpecuniary factors is consistent with the remedial nature of the partition statute, which we have stated "should be interpreted to give the trial court as many options as possible to achieve equity between the parties, including an expansive power to assign property to one of the co-tenants." Wilk, 173 Vt. at 346, 795 A.2d at 1194. We therefore do not attempt here to create an exhaustive list of factors that may be considered. Rather, it will be up to the trial court, as in other contexts, to weigh the equities and determine if partition in kind will greatly inconvenience one or more parties. See id. at 348, 795 A.2d at 1195 (noting that trial court is often called upon to weigh equities and assign property to one party, even if both parties have equal claim to property, as for example in divorce).

¶ 21. Further, although 12 V.S.A. § 5174 requires a finding that partition in kind will greatly inconvenience "the parties," we have no trouble in concluding that such a finding may be based on evidence showing that physical division will substantially disadvantage one cotenant. When construing a statute, "words importing the plural number may be applied as if singular." 1 V.S.A. § 175. Further, "the fundamental objective in a partition action is to divide the property so as to be fair and equitable and confer no unfair advantage on any of the cotenants." Wynkoop, 2016 VT 5, ¶ 20 (quoting Frame v. Frame, 740 P.2d 655, 658 (Mont. 1987)); see also Glenwood Inv. Props., L.L.C. v. Carroll A. Britton Fam. Tr., 765 N.W.2d 112, 118 (Minn. Ct. App. 2009) ("Whatever mode of partition is adopted, it must be capable of execution without advancing the interests of one owner at the expense of the others."). For these reasons, we hold that the trial court

8

may decline to impose partition in kind if the evidence shows that it will greatly disadvantage one of the parties.

¶ 22. The trial court's holding in this case is consistent with these principles and is supported by the evidence presented. The court found that the property could not be divided as plaintiff proposed without causing great inconvenience to defendant. The proposed division was facially inequitable because it gave defendant only one-third of the acreage, and there was insufficient evidence that the proposed parcels were equal in market value.[2] The division would also prevent defendant from accessing areas that he used for logging to heat his home and pay the property taxes, cut off defendant's access to a family cemetery, and make his access to the town road uncertain. These findings are supported by defendant's testimony, as well as the testimony of a surveyor. By reconsidering the evidence and making an express finding that physical partition would greatly inconvenience defendant, the court complied with this Court's instructions on remand.

¶ 23. Plaintiff faults the trial court for failing to find that, if partition in kind were granted, the value of each share would be materially less than the value of the property as a whole. However, there was no evidence presented that would allow the court to make such a finding. The court's finding of great inconvenience was based on the evidence that it did have and took into account both pecuniary and sentimental factors, which, as we concluded above, can be appropriate considerations in a partition case.

¶ 24. Plaintiff argues that the trial court's ruling was unfair because it placed the burden on the parties to present other options for dividing the property. He claims that, if the court felt it could

---

[2] The only evidence regarding the value of the proposed parcels was plaintiff's opinion that the parcels would be worth approximately the same because although defendant would receive fewer acres, he would be getting the flatter, more useful land. The court was free not to credit plaintiff's opinion, particularly where it was unsupported by an appraisal or any other evidence. See Anderson-Friberg Co. v. S. G. Phillips Corp., 137 Vt. 565, 566, 409 A.2d 560, 561 (1979) ("Like the weighing of the evidence, the credibility of witnesses and the persuasiveness of their testimony are to be determined solely by the trier of fact.").

9

not impose the division proffered by plaintiff, it should have asked the parties to present additional evidence or called its own witnesses to see if any other division was possible.

¶ 25. We are unpersuaded by plaintiff's arguments. The parties in this case waived the appointment of commissioners and instead opted to have a bench trial of the partition claim. By so doing, they shouldered the burden of supporting their preferred positions with admissible evidence. Plaintiff offered his proposed division, which was created by his wife rather than a surveyor or other expert. Defendant did not present a proposed division, and instead offered evidence to show that any physical partition would cause him great inconvenience. Neither party presented an appraisal of the property. There was almost no evidence from which the court could determine whether the parcels proposed by plaintiff would be equal in value, and no evidence at all to compare the market value of the proposed parcels to the value of the property if sold as a whole. Although plaintiff asserts that the trial court could have cured the problems with his proposed division "with the stroke of a pen," he does not explain how the court could have made an alternative equitable physical division without engaging in speculation. See Comm'r of Lab. v. Eustis Cable Enters., LTD, 2019 VT 2, ¶ 10, 209 Vt. 400, 206 A.3d 1260 ("While a factfinder may draw rational inferences, those inferences must add up to more than mere suspicion, and the factfinder cannot bridge evidentiary gaps with speculation." (quotation omitted)); Nordgaarden, 527 P.3d at 496 (affirming trial court's finding that property could not be divided without great prejudice to parties, in part because cotenant seeking physical division failed to introduce any evidence indicating value of proposed parcels would be reasonably equivalent in value).

¶ 26. The court explained the problems with plaintiff's proposed division in the initial order it issued in March 2022. It gave the parties an opportunity to present new proposals on remand. Despite this, plaintiff continued to rely on his original proposed division. Neither party sought to present additional evidence or to have the court conduct a site visit. While the court theoretically could have asked for more evidence or called its own witnesses, nothing in the partition statute

obligated it to do so.  Plaintiff himself admits that he deliberately chose not to present any further evidence, believing that he was entitled to his proposed division because the court had previously ordered it as a backup remedy.  That he made an unwise tactical decision does not render the court's decision erroneous.  The trial court could only make findings based on the evidence presented to it, and that evidence indicated that physical partition would cause great inconvenience to defendant, making partition by assignment appropriate.

Affirmed.

FOR THE COURT:

_____

Associate Justice